# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00775-SCT

*JACOB HENDERSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/97 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/4/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

## BEFORE PRATHER, C.J., McRAE AND WALLER, JJ.

### PRATHER, CHIEF JUSTICE, FOR THE COURT:

## I. STATEMENT OF THE CASE

¶1. On June 6, 1997, Jacob Henderson was indicted as an habitual offender for the October 19, 1995, burglary of the M & K Convenience Store in Lake, Mississippi. On June 13, 1997, Henderson was tried, convicted, and sentenced in the Scott County Circuit Court to seven years in prison without parole, and fined $5,000.00. On June 17, 1997, Henderson's motion for a new trial was denied. Henderson appeals, *in forma pauperis*, and raises the following issues for consideration by this Court:

**A. Whether the trial court erred in overruling appellant's objection to rebuttal testimony of prosecution witness Henry Minor as improper?**

**B. Whether the trial court erred in refusing appellant's claim that he had been denied a speedy trial and in denying his implicit motion for dismissal?**

**C. Whether introduction of evidence that prosecution witness and alleged accomplice Daniel Wilson had agreed to plead guilty to being an accessory to the same crime as appellant was**

**charged with, denied appellant a fair trial?**

¶2. This Court finds that the issues raised by Henderson are without merit. Therefore, the judgment of the trial court is affirmed.

## II. <u>STATEMENT OF THE FACTS</u>

¶3. The M & K Convenience Store in Lake Mississippi was robbed, between 10:00 p.m., October 18, 1995, and 1:30 a.m., October 19, 1995. The following were stolen: 106 cartons of cigarettes, some rolled change, and some plastic shipping crates with the store's name on them. Two witnesses saw a U-Haul truck parked outside the front door of the store, between 12:15 a.m. and 1:00 a.m., on October 19, 1995.

¶4. The appellant's co-indictee, Daniel Wilson of Jackson, testified that, on the night of the burglary, Henderson asked Wilson to ride in a U-Haul truck. Wilson agreed to do so, but did not ask where they were going or where Henderson got the truck. Wilson slept, and, when he awoke, Henderson had parked the truck in front of M & K Convenience Store. Henderson exited the truck, and said that he would be "right back."

¶5. Wilson heard glass break and saw Henderson take two crates of cigarettes from the store and place them in the back of the truck. Wilson did not exit the cab of the truck and he did not help Henderson; Wilson did not know what Henderson was going to do, until he heard the glass break. After Henderson finished loading the truck, they went to Morton. Henderson told Wilson, "[D]on't say nothing". Wilson, who was scared, complied.

¶6. The police stopped them in Morton, and Henderson gave permission to search the truck. The police found the marked crates of cigarettes, the rolled change, a pair of gloves, and a crowbar in the back of the truck. Henderson stated that he got the cigarettes from "a wholesale place in Jackson." Henderson and Wilson were arrested.

¶7. Wilson, pled guilty to accessory after the fact, in exchange for the State's sentencing recommendation of three years in prison, with two years suspended, and a $1,000.00 fine. Wilson, who had never been convicted of or pled guilty to another felony, understood that he could have gone to jail for seven years on the burglary charge.

¶8. Wilson denied that the burglary was his idea. Wilson also denied that anyone else was involved in the burglary, or that anyone else followed them in a separate vehicle. However, Henderson, age 39, contradicted Wilson. According to Henderson, around 9:45 p.m., on October 18, 1995, someone named "Nugene" approached in a U-Haul truck, and offered to pay Henderson and Wilson to help move some furniture for a female friend in Morton.

¶9. Henderson and Wilson agreed, and, they left Jackson in the U-Haul truck around 11:00 p.m. They followed Nugene, who was driving a car, from Jackson to Morton. Upon arriving in Morton, Nugene directed them to stop at a gas station. Nugene said that he was going to see if the woman was home, and left in his own vehicle.

¶10. After about fifteen minutes, Henderson decided to leave. As he left Morton, Henderson was stopped by the police. Henderson had no idea what was in the back of the U-Haul truck.

¶11. Henderson denied telling the police that the cigarettes came from any particular place. Henderson denied going to Lake or breaking into the M & K Convenience Store that night. Rather, Henderson stated that he had never heard of the store. Henderson also denied knowledge or ownership of the crowbar and gloves. Henderson had previously been convicted and incarcerated in the penitentiary for two felonies: business burglary and auto burglary.

## III. LEGAL ANALYSIS

**A. Whether the trial court erred in overruling appellant's objection to rebuttal testimony of prosecution witness Henry Minor as improper?**

¶12. Henderson first argues that Officer Minor's rebuttal testimony was improper. The record reflects that, on cross-examination by the State, Henderson denied telling the police where he got the cigarettes. The State called Officer Minor in rebuttal, who testified over Henderson's objection. Minor stated that, when he discovered the cigarettes in the U-Haul, he asked where Henderson got them. Henderson replied that he got the cigarettes from "a wholesale place in Jackson."

¶13. Henderson argues that Officer Minor's testimony was outside the scope of proper rebuttal testimony. Long ago, this Court determined that: "[w]hen a defendant takes the stand and testifies in his own behalf, he subjects himself to cross-examination. The fact that such cross-examination is vigorous is not objectionable so long as it is not abusive, and is confined to the proper scope." *Rush v. State*, 254 Miss. 641, 653, 182 So. 2d 214, 219 (1966).

> "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Johnston v. State*, 567 So.2d 237, 238 (Miss.1990). The discretion of the trial judge, however, must be exercised within the boundaries of the Mississippi Rules of Evidence. *Johnston*, 567 So.2d at 238. *See* M.R.E. 103(a), 104(a). **M.R.E. 611(b) allows wide-open cross-examination** so long as the matter probed is relevant. M.R.E. 611(b), Comment; *State Highway Com'n of Miss. v. Havard*, 508 So.2d 1099, 1102 (Miss.1987).

*Zoerner v. State*, No. 96-KA-00318-SCT, slip op. at 3 (Miss. June 18, 1998) (quoting *Johnston v. State*, 618 So. 2d 90, 93-94 (Miss. 1993)) (emphasis added).

¶14. In the case *sub judice*, the defendant took the stand. Therefore, his credibility was relevant. On cross-examination, the State apparently sought to impeach Henderson by showing that he lied to the arresting officer -- that is, he told Officer Minor that the cigarettes came from a wholesaleplace in Jackson. When Henderson's testimony on the stand was different from Minor's version of the facts, the State was properly allowed to impeach Henderson with Minor's testimony. *See Johnson v. State*, 666 So. 2d 499, 503 (Miss. 1995) ("'Where an accused, on direct examination, seeks to exculpate himself, such testimony is subject to normal impeachment via cross-examination . . . '") (quoting *Stewart v. State*, 596 So. 2d 851, 853 (Miss. 1992)).

¶15. Thus, the trial judge did not abused his discretion by admitting this evidence, which was relevant to Henderson's credibility. *See Johnson*, 666 So. 2d at 503 ("Reversal is proper only where such discretion has been abused and a substantial right of a party has been affected.") (citing *Green v. State*, 614 So.2d 926, 935 (Miss.1992); M.R.E. 103(a)). Therefore, Henderson's argument on this point is without merit.

**B. Whether the trial court erred in refusing appellant's claim that he had been denied a speedy trial and in denying his implicit motion for dismissal?**

¶16. Henderson also claims that he was denied a speedy trial. The record reflects that he was arrested October 19, 1995; indicted June 6, 1996; and, tried June 13, 1997. The record further indicates that Henderson made the following statements to the trial judge-- after the jury was selected, and before the jury was empaneled:

> BY THE COURT: What is it you want to say to the Court?
>
> BY THE DEFENDANT: What I wanted to say to the Court is about this indictment that I received. This is an old case here, back in 1995, and the indictment that I received is insufficient. It's not written up properly according to the United States Constitution. It don't have the formal name on it. I just received the indictment, you know, in July of `96, and I've been out nearly two years.
>
> BY THE COURT: The original is in the Court file has the signatures on it. It was filed this term of Court. If you are making a *pro se* motion, your motion is overruled. All right. Let's go to the Courtroom.

¶17. Based on this exchange, Henderson argues that he implicitly asserted his right to a speedy trial and moved to dismiss. The State contends that Henderson never asserted his right to a speedy trial. It appears that Henderson was arguing the sufficiency of the indictment, and not his right to a speedy trial. This is particularly true, given the context of Henderson's comments. That is, the jury had already been selected, and an argument for a speedy trial was moot. The trial judge could not do anything to give Henderson a speedier trial at that point. Even assuming that Henderson's comments constituted an assertion of his constitutional right to a speedy trial, the argument is without merit.

¶18. The familiar, four-pronged test for reviewing constitutional speedy trial questions was set forth in ***Barker v. Wingo***, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and, (4) resulting prejudice to the defendant. In the case *sub judice*, Henderson was tried approximately twenty months after his arrest. With regard to other factors, the record is silent on the reason for the delay. In addition, the issue of whether Henderson asserted his right to a speedy trial is questionable. However, even if Henderson's comments constituted an assertion of his right to a speedy trial, such assertion was far from timely, given that the jury had already been selected. ***See Ross v. State***, 605 So. 2d 17, 23 (Miss. 1992) (citing ***Barker***, and noting that the "failure to assert the right makes it difficult for the defendant to prove denial"). Finally, Henderson does not specifically demonstrate or argue how he was prejudiced.

¶19. This Court recently considered a similar case and held that the appellant's right to a speedy trial was not violated. ***See Sanders v. State***, 678 So. 2d 663, 670 (Miss. 1996) (no speedy trial violation where the defendant was tried approximately twenty months after being arrested, and did not timely raise the speedy trial issue, and record was devoid of other evidence on speedy trial issue).

¶20. Therefore, even if this Court were to consider the merits of this issue, Henderson's argument fails. That is, Henderson's right to a speedy trial was not violated, given that (a) the record is devoid of reasons for the delay; (b) Henderson's assertion of this right is questionable; and (c) Henderson has neither demonstrated nor argued how he was prejudiced. ***See id.***

**C. Whether introduction of evidence that prosecution witness and alleged accomplice Daniel Wilson had agreed to plead guilty to being an accessory to the same crime as appellant was charged with, denied appellant a fair trial?**

¶21. Finally, Henderson argues that he was prejudiced and denied a fair trial when the State questioned co-indictee Wilson regarding Wilson's plea bargain arrangements for involvement in this crime. Henderson admits that no contemporaneous objection was raised on his behalf. Therefore consideration of this issue is precluded on appeal. *See Williams v. State*, 684 So. 2d 1179, 1189 (Miss. 1996).

¶22. Nevertheless, Henderson argues that the admission of this testimony was plain error, and requires reversal. In the alternative, should this Court enforce the procedural bar, Henderson claims that his trial counsel was ineffective, for failing to lodge a contemporaneous objection.

¶23. However, even if this Court were to consider the merits of this issue, Henderson's argument fails. Henderson contends that the admission of co-indictee Wilson's guilty plea was improper. In support of this argument, Henderson cites a line of cases, in which this Court held that it is improper to introduce an accomplice's conviction of the same crime for which the defendant is being tried. *See, e.g., Johns v. State*, 592 So. 2d 86, 90 (Miss. 1991); *Henderson v. State*, 403 So. 2d 139, 141 (Miss. 1981); *Griffin v. State*, 293 So. 2d 810 (Miss. 1974).

¶24. The same argument was rejected in *White v. State*, 616 So. 2d 304, 307 (Miss. 1993). In *White*, this Court held that the prior line of cases was distinguishable,

> because we are dealing with a plea of guilty in the instant case; that is, a prior admission of guilt, which is consistent with the testimony at trial. This is a significant distinction because prior statements have evidentiary value different from prior findings of other tribunals.

> Moreover, whether an error in admitting this evidence is sufficiently prejudicial to warrant reversal may be resolved differently where the offending evidence is no more than a repetition of what is said by the witness before a jury and subject to cross examination, as opposed to evidence of the collective judgment of another jury.

> * * *

> Federal and state appellate courts have found the admission of a co-conspirator's plea of guilty, while incompetent as substantive evidence of the defendant's guilt, may be admissible for other purposes [such as impeachment].

> * * *

> Here the prosecutor jumped the gun. [The accomplice's] guilty plea was elicited prior to any attack on his credibility. Under our precedents, then, the testimony should have been excluded. The question arises, then, whether this error is sufficient to require reversal. We think not.

*White*, 616 So. 2d at 307-308.

¶25. Given this authority, Henderson's argument is without merit. That is, "the premature references and

testimony cannot be deemed error sufficient to warrant reversal." *Id.* at 308. Therefore, Henderson's argument would fail, even if its consideration were not procedurally barred.

## IV. <u>CONCLUSION</u>

¶26. The issues raised by Henderson are without merit. Therefore, the judgment of the trial court is affirmed.

¶27. **CONVICTION OF BURGLARY AS AN HABITUAL OFFENDER AND SENTENCED TO SERVE SEVEN (7) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY A FINE OF $5,000.00 AFFIRMED. THE SENTENCE IS TO BE SERVED WITHOUT THE BENEFIT OF PAROLE, SUSPENSION OR REDUCTION OF SENTENCE.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH, WALLER AND MILLS, JJ., CONCUR**.