MYERS, J.,
for the court.
¶ 1. Gretchen Black was arrested on October 4, 1997, for the murder of James Lewis Black. Gretchen Black was convicted in the Circuit Court of Lee County on May 12,1999, and sentenced to serve a life sentence in the custody of the Mississippi Department of Corrections. Black filed a motion for judgment notwithstanding the verdict or, alternatively, new trial which was summarily denied by the trial court. Aggrieved by this decision, Black perfected this appeal raising the following issues:
1. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE TRANSCRIPT OF BLACK’S INTERVIEW WITH A POLICE INVESTIGATOR;
2. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO REVIEW COPIES OF THE TRANSCRIPT IN THE JURY ROOM DURING A BREAK IN THE TRIAL;
3. WHETHER THE TRIAL COURT ERRED IN ALLOWING A REBUTTAL WITNESS TO TESTIFY;
4. WHETHER THE TRIAL COURT ERRED IN DENYING BLACK’S MOTION TO SUPPRESS HER JOURNAL;
5. WHETHER THE TRIAL COURT FAILED TO PROVIDE BLACK A SPEEDY TRIAL; AND
6. WHETHER THE VERDICT REACHED BY THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
STATEMENT OF FACTS
¶ 2. Gretchen Black shot her estranged husband, James Lewis Black, on October 4, 1997. Black was arrested the same day. Black was indicted for the crime of murder on February 23, 1998, and arraigned on March 26, 1998, at which time Black was first provided a court-appointed attorney. Black pled not guilty alleging that she had acted in self-defense. A trial was had and Black was convicted and sentenced on May 12,1999.
¶ 3. During the course of the trial, the State offered and the trial court admitted into evidence Black’s signed statement taken by the police and the recorded inter *546 view also taken by the police. Additionally, the State sought to introduce the transcript of Black’s recorded interview. The trial court allowed the transcript to be admitted into evidence and, additionally, allowed the jurors to take copies of the transcript with them into the jury room during a recess prior to the State resting its case-in-chief. The trial court allowed the State to call a rebuttal witness who had remained in the courtroom after the rule of sequestration had been invoked by Black. Further, the trial court allowed Black’s journal to be admitted into evidence wherein Black wrote of her plans to murder her husband. After all the foregoing was admitted into' evidence, Black was found guilty and sentenced to serve a life term in the custody of the Mississippi Department of Corrections. Black moved for judgment notwithstanding the verdict or, alternatively, a new trial. The trial court denied these motions and Black filed the present appeal.
LEGAL ANALYSIS
1. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE TRANSCRIPT OF BLACK’S INTERVIEW WITH A POLICE INVESTIGATOR.
¶ 4. Black first contends that the trial court erred when it admitted the transcript of her taped interview with the police into evidence. The transcript consisted of notes the interviewing officer had taken while conducting the recorded interview. Black asserts that the transcript was not properly authenticated. The. relevancy and admissibility of evidence are within the trial judge’s discretion. Eskridge v. State, 765 So.2d 508, 509(¶7) (Miss.2000). This Court will reverse only where the trial judge has abused his discretion. Id. “The discretion of the trial judge, however, must be exercised within the boundaries of the Mississippi Rules of Evidence.” Henderson v. State, 732 So.2d 211, 213(¶13) (Miss.1998). Mississippi Rule of Evidence 901 governs the authentication of documents and provides that authentication of a document is a condition precedent to it being admissible. M.R.E. 901.
¶ 5. The officer who produced the transcript testified that he took the notes while conducting Black’s recorded interview. The officer further testified that he was present at the time the interview was recorded and that the transcript accurately reflected the substance of the interview. The officer also stated that he had not reviewed the tape since making the transcript. The supreme court in its decision in West v. State, determined that a statement that was tape-recorded and later transcribed was properly authenticated where a police officer who was present while the tape-recording occurred testified that the transcript fairly and accurately depicted what was on the tape. West v. State, 463 So.2d 1048, 1055 (Miss.1985). We And the current situation analogous. The officer conducting Black’s interview was present while the interview was tape-recorded. The officer testified under oath that the transcript he made while interviewing Black fairly and accurately reflected their taped conversation. The transcript was properly authenticated. The trial judge did not abuse his discretion in allowing the transcript to be admitted into evidence. This issue is without merit.
2. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO REVIEW COPIES OF THE TRANSCRIPT IN THE JURY ROOM DURING A BREAK IN THE TRIAL.
¶ 6. Black next contends that the trial court erred when it allowed the jury *547 to review copies of the transcript in the jury room during a break in the trial prior to the State resting its case-in-chief. The State requested that the jury be allowed to review the transcript during a recess as the document was lengthy. Black contends that this caused the jury to bolster the evidentiary value of the transcript and, as such, prejudiced her case. We have already determined that the transcript was properly authenticated and admitted into evidence. The supreme court has determined that it was not error for the trial court to allow the jury to carry exhibits into the jury room prior to the jury being released to deliberate the case. Huey v. Port Gibson Bank, 390 So.2d 1005, 1007 (Miss.1980). In Huey, however, the jury was allowed to carry back exhibits from both sides of the case. Id. Black’s jury was only allowed to carry the transcript to the jury room during the one recess. We can find no prejudice in this instance flowing from the trial court’s decision to allow the jury to review the transcript during a recess as Black’s signed statement and the entire tape-recorded interview which contained the same statements made by Black were also introduced into evidence and given to the jury to consider during its deliberations. This Court does not approve of the process of allowing the jury to view the evidence in a piecemeal fashion and would discourage the trial courts from allowing the jury to take evidence into the jury room prior to the commencement of deliberations. In this instance no prejudice flowed from the jury taking copies of the statement to the jury room for the reasons discussed above. This issue is without merit.
3. WHETHER THE TRIAL COURT ERRED IN ALLOWING A REBUTTAL WITNESS TO TESTIFY.
¶ 7. Black asserts that the trial court erred when it allowed the State to call a witness who was present during the course of most of the testimony presented in the case after Black had invoked the rule of sequestration and had all witnesses excluded from the court room. Mississippi Rule of Evidence 615 provides that upon the request of a party the trial court shall order the witnesses excluded from the courtroom while other witnesses are testifying so that they may not hear the other witnesses’ testimony. M.R.E. 615. Once the rule has been violated by a witness, it is within the trial court’s discretion to determine what remedy to apply. Rochell v. State, 748 So.2d 103, 113(¶ 36) (Miss.1999). “Remedies may include prospectively excluding the witness where prejudice will otherwise ensue; striking the witness’s testimony where connivance gave rise to the testimony; striking the witness’s testimony where the testimony gave rise to prejudice; or, most appropriately, allowing the other party to subject the witness to a ‘full-bore cross-examination’ on the facts of the rule violation.” Id. The trial court limitéd the witness’s testimony on direct and allowed Black to subject the witness to a full-bore cross-examination. The remedy provided by the trial court was permissible and cured any prejudice created by the witness remaining in the courtroom improperly during the course of the trial. This issue is without merit.
4. WHETHER THE TRIAL COURT ERRED IN DENYING BLACK’S MOTION TO SUPPRESS HER JOURNAL.
¶ 8. Black contends as her next point of error that the trial court erred when it denied her motion to suppress the introduction into evidence of her journal which contains an entry made the day Black admittedly shot her husband wherein Black stated that if her husband was at the farm that “he was dead.” *548 Black contends on appeal that the journal was not properly authenticated when it was admitted into evidence. As previously stated in the first issue raised by Black, the admissibility of evidence rests within the trial judge’s discretion. Eskridge, 765 So.2d at 509(¶ 7). Mississippi Rule of Evidence 901 requires that evidence be properly authenticated prior to its admittance into evidence. M.R.E. 901. “A person’s handwriting may be authenticated by a handwriting expert or by a lay witness with a prior familiarity with that person’s handwriting.” Sewell v. State, 721 So.2d 129, 139(¶ 57) (Miss.1998). The journal was authenticated by Black’s son who stated that the handwriting contained in the journal was his mother’s handwriting and that, while he had not observed his mother writing in this particular journal, he had observed her writing in journals. Further, the inside cover of the journal indicated that the journal was the property of Black and was found in Black’s house next to Black’s chair. The trial court did not abuse its discretion in allowing the journal to be admitted into evidence. This issue is without merit.
5. WHETHER THE TRIAL COURT FAILED TO PROVIDE BLACK A SPEEDY TRIAL
¶ 9. Black contends that she was denied a speedy trial. The record indicates that Black was arrested October 4, 1997; indicted February 23, 1998; arraigned March 26, 1998; and convicted and sentenced May 12, 1999. “The constitutional right to a speedy trial attaches at the time of a formal indictment, information, or arrest.” Birkley v. State, 750 So.2d 1245, 1249(¶ 11) (Miss.1999). This Court utilizes the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether a defendant has received a speedy trial. Birkley, 750 So.2d at 1249(¶ 11). “The factors to be considered are: (1) length of delay; (2) reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.” Id. In weighing these factors, the totality of the circumstances must be considered. Id. at (¶ 12).
¶ 10. The analysis of the Baker factors begins with the first factor, length of delay, as it operates as a triggering mechanism. Id. at (¶ 13). If calculated from the date of arrest, the length of delay for Black was nineteen months. Any delay of eight months or more is presumptively prejudicial to the defendant. Id. at (¶ 14). The nineteen month delay in this case is presumptively prejudicial and triggers a further analysis of the Baker factors. While the length of the delay itself favors Black, it should be noted that Black filed a motion for continuance on April 3, 1998, for a psychiatric evaluation which the trial court approved. Further, the State filed a motion requesting the trial court to order a trial date on September 18, 1998, as Black had failed to provide her paperwork to the state hospital. Black filed a response to the State’s motion on September 23, 1998, seeking to have the mental evaluation conducted before trial was had. The trial court allowed Black the time needed to complete the paperwork and have the evaluation. On February 19, 1999, Black again requested a continuance so that she could be evaluated by a local psychiatrist. The trial court also allowed this continuance. Trial was eventually had on this matter and Black was convicted in May of 1999.
¶ 11. As previously discussed, twelve months of the delay may be attributed to continuances sought by Black. “[I]f the defendant caused the delay, he will not be allowed to complain.” Stogner *549 v. State, 627 So.2d 815, 818 (Miss.1993). As Black caused the majority of the delay, she cannot complain about the length of time between her arrest and trial. The reason for the delay weighs heavily in favor of the State.
¶ 12. Black did not assert her right to a speedy trial until presenting the issue for the first time in her motion to dismiss filed on April 20,1999. This factor favors the State as Black did not assert her right to a speedy trial until three weeks before the trial was conducted. The accused does not have the duty to bring herself to trial, but gains more points under this factor where she has asserted her right to a speedy trial in a timelier fashion. Stogner, 627 So.2d at 819.
¶ 13. The final factor for consideration is the prejudice to Black as a result of the delay. The right to a speedy trial is designed to protect three important “interests of the defendant: a) protect against oppressive pretrial incarceration; b) minimize anxiety and concern of the defendant; and c) limit the possibility that the defense will be impaired.” Birkley, 750 So.2d at 1252(¶ 24). Black contends that she was prejudiced by the length of her incarceration before trial. While Black caused the majority of the delays in this trial, the trial was nevertheless delayed resulting in prejudice to Black. This factor favors Black.
¶ 14. Upon weighing the Baker factors, the length of the delay and the prejudice caused by that delay weigh slightly in favor Black. The reason for the delay weighs heavily in favor of the State as the majority of the delay was caused by continuances granted to Black. Further, Black did not assert her right to a speedy trial until three weeks prior to the actual trial. This factor also favors the State. Upon evaluating each factor and examining the totality of the circumstances, Black was not denied her right to a speedy trial. This issue is without merit.
6. WHETHER THE VERDICT REACHED BY THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 15. Black’s final contention is that the verdict returned against her was against the overwhelming weight of the evidence. Black first challenged the weight of the evidence at the conclusion of the prosecution’s case with a motion to dismiss. Black again challenged the weight of the evidence with a motion for judgment notwithstanding the verdict or, alternatively, new trial. On appeal this Court reviews the lower court’s ruling on the last occasion the weight of the evidence was challenged before the lower court, i.e., on Black’s motion for JNOV/new trial. Wetz v. State, 503 So.2d 803, 807 (Miss.1987). In reviewing the trial court’s denial of Black’s motion for new trial, all evidence is viewed “in the light most favorable to the verdict.” Id. at 808. “The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.” Id. This Court will reverse only where the evidence is “such that reasonable and fair-minded jurors could only find the accused not guilty.” Id. The jury acts as the judge of the credibility of witnesses where conflicting testimony is presented. Id. at 813.
¶ 16. At trial, the State presented the next door neighbor of James Black who heard the shots fired by Gretchen Black. The neighbor also saw Gretchen Black’s car leaving the scene after the shots were fired. The State also offered the testimony of Black’s son who testified that Black called him and told him that she had shot James Black. Further, the State presented police officers present *550 during Black’s arrest and subsequent interview who stated that Black admitted to shooting her husband. Finally, Black admitted in open court that she shot her husband. Black does contend that she only shot her husband because she was afraid of him, essentially raising the defense of self-defense. However, no weapons were found on the victim’s body or near his person. The State presented sufficient evidence for the jury to find that Black murdered her husband. The verdict “is not against- the overwhelming weight of the evidence. This issue is without merit.
CONCLUSION
¶ 17. The transcript of Black’s interview was properly authenticated and admitted into evidence. It was permissible for the trial court to allow the jury to review the transcript in the jury room during a trial recess. The trial court did not err in allowing the State to call a rebuttal witness who had remained in the courtroom after Black had invoked the rule of sequestration as the trial court allowed a full-bore cross-examination of the witness. Black’s journal was properly authenticated and admitted into evidence. Black was not deprived of her right to a speedy trial as the majority of the delay created in this case was of Black’s own volition. Finally, the jury’s verdict was not against the overwhelming weight of the evidence as reasonable jurors could have found Black guilty of murder.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, CHANDLER AND BRANTLEY, JJ„ CONCUR. IRVING, J., CONCURS IN RESULT ONLY.