BARNES, J.,
for the Court:
¶ 1. Dexter Lipsey was convicted in the Hinds County Circuit Court for the murders of Louise T. Ray, J.W. Gilbert, and Bruce Rankin, and the kidnaping of Rebecca Virden. He was sentenced to life for the murder convictions and thirty years for the kidnaping conviction, all in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender, with each count to run consecutively to each other.
¶ 2. Lipsey argues on appeal that the trial court deprived him of his opportunity to present a complete defense when the *344 court: barred him from presenting the testimony of an alibi witness, granted the State’s motion in limine to restrict testimony regarding cocaine found in the victims’ blood or to refer to the murder scene as a “crack house,” refused to permit Lipsey to make a proffer, and denied him the opportunity to recross-examine Dr. Steven Hayne. Lipsey also claims that the trial court erred by failing to use the correct legal standard in admitting autopsy photographs during the trial, as well as by denying Lipse/s motion to dismiss for failure to grant him a speedy trial. Finding no error, we affirm Lipse/s convictions and sentences.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. Lipsey was arrested and charged with the shooting deaths of Ray, Gilbert, and Rankin, and the kidnaping of Virden. Virden testified that she was living with her girlfriend, Ray, at 3520 Cromwell Street in Jackson, Mississippi. Virden stated that on November 10, 2005, she was in the process of moving her belongings to her daughter’s home, because Virden and Ray had been fighting. Virden testified that she had been drinking since seven o’clock that evening, but she maintained that she was not drunk. Virden stated that Lipsey, a man she previously knew only by the nickname of “D,” entered her room at Ray’s house, holding a rifle, and ordered her to come into the living room. Gilbert and Rankin were sitting on the couch; Ray was standing between them with her hands raised. Lipsey demanded that Ray pay him the twenty-five dollars he claimed that she owed. Ray said she did not have the money. Lipsey asked a second time, and Ray repeated that she did not have the money. Virden testified that Lipsey then shot Ray, who fell into Gilbert’s lap. Virden put her head between her knees, then heard a second shot. Virden stated that she blacked out after hearing the second gunshot. Virden said that Lipsey then pulled her up by her hair and forced her to get into his car, telling her that he wanted her to help him get money from automatic bank teller machines. While en route to the bank, Vir-den insisted that she had to use the bathroom, and Lipsey stopped the car, got out with her, and took Virden to a field as he kept the rifle on her.
¶ 4. Officer James Thomas of the Ridge-land Police Department testified that at approximately 8:37 p.m. on November 10, 2005, he noticed a 1990s model white Oldsmobile on the roadside of Old Agency Road. Officer Thomas turned on his spotlight to get a better look; he noticed two people, a man and a woman, at the wood line in a ditch. Officer Thomas testified that the woman, who later identified herself as Virden, was kneeling on the ground with her pants down to her knees and hands on top of her head. Officer Thomas asked if there was a problem, but the male answered that Virden simply needed to use the bathroom. Officer Thomas stated that he exited his patrol car and shone his flashlight over the male, and then noticed that the man had an SKS assault rifle in his right hand. Officer Thomas drew his gun and ordered the man to drop the gun and stop moving. Officer Thomas testified that the man kept walking, got into the car, dropped the rifle and drove off, with the headlights off. Officer Thomas testified that he could not see the man well enough to identify him. Officer Thomas then walked over to Virden, who began screaming and crying that she had been kidnaped from a house in Jackson. Officer Thomas subsequently notified the Jackson Police Department of a possible kidnaping at 3520 Cromwell Street in Jackson.
¶ 5. Lieutenant Tamara Miliken of the Jackson Police Department testified that she and three other officers arrived at *345 3520 Cromwell Street shortly after Officer Thomas notified the Jackson Police Department of a possible kidnaping from the house. Lt. Miliken led the way inside the house and found two men and one woman sitting on the couch; the woman was slumped over the lap of one of the men, and all three victims were dead.
¶ 6. Detective Tyree Jones of the Jackson Police Department testified that he eventually developed Lipsey as a suspect after receiving Lipsey’s name from an anonymous caller who identified the suspect, “D,” as Dexter Lipsey. After receiving this information, Detective Jones compiled several photographs of black males who went by the alias “D.” Virden identified Lipsey as her kidnaper and the shooter from this photographic lineup.
¶ 7. Sheila Galloway, Lipsey’s girlfriend, testified that Lipsey took her to work on the afternoon of November 10, 2005, and picked her up that evening at 11:00 p.m. Lipsey drove Galloway’s car, a white Oldsmobile. Galloway stated that when Lipsey picked her up that evening, he was wearing the same clothes as when he dropped her off that afternoon, and she saw no blood or any signs of a gun.
¶ 8. After a trial held on September 4 through 6, 2007, Lipsey was found guilty of all counts. Upon the verdict, the trial court sentenced Lipsey as a habitual offender to three terms of life imprisonment for the murders of Ray, Gilbert, and Rankin, and thirty years for the kidnaping of Virden. Lipsey now appeals, and asks this Court to reverse his convictions and vacate his sentences or, in the alternative, remand this case for a new trial.
DISCUSSION
I. Whether the trial court deprived Lipsey of his opportunity to present a complete defense.
¶ 9. Lipsey argues that the trial court deprived him of the opportunity to present a defense when it barred him from presenting the testimony of an alibi witness; granted the prosecutors’ motion in limine to restrict testimony as to cocaine found in the blood of Ray, Rankin, and Gilbert, or to refer to 3520 Cromwell Street as a “crack house”; refused to permit Lipsey to make a proffer; and denied Lipsey the opportunity to recross-examine Dr. Hayne. We shall discuss each contention in turn.
A. Alibi Witness
¶ 10. On August 17, 2007, the State filed a motion for reciprocal discovery, requesting written notice with respect to any alibi witnesses that Lipsey might call to testify at trial. On September 3, 2007, which was the Labor Day holiday, Lipsey’s counsel sent an e-mail to the prosecutor, stating that “my client informed me today that he has a possible [alibi] witness, Vanessa Sims, who will testify that she was with him on November 10, 2005, at around 6:30 p.m. until he picked up his girlfriend from work.” The trial was set to begin the next day, on September 4, 2007. On the day of trial, the State filed a motion to suppress the proposed alibi witness, arguing that the notice given by the defense counsel was not in proper form; the notice was not timely; and the defense counsel failed to comply with the requirements of Uniform Rule of Circuit and County Court 9.05. Attached to the motion as an exhibit was a copy of the September 3 e-mail from Lipsey’s counsel to the prosecutor. Lipsey’s counsel assured the trial court that she notified the prosecutor as soon as she learned from Lipsey that Sims might be a possible alibi witness, but she explained that she had not yet spoken to Sims. Lipsey’s counsel also admitted that her investigator had not yet been able to locate Sims.
¶ 11. After jury selection and before the court recessed for the day, the State *346 informed the trial court judge that he had been notified by the defense that Sims had been located, and the defense wished to make her available for an interview. Lip-sejfs counsel affirmed that the witness had been found, and she informed the judge that she had spoken to Sims. The State renewed its motion to suppress or exclude the witness, claiming that there was no time to investigate Sims’s proposed testimony. The following day, the trial court granted the State’s motion, finding that the defense had failed to identify the witness in a timely manner and also had failed to produce the proposed testimony or any statement of the witness. After this ruling, Lipsey’s counsel added for the record that she had spoken with Sims the day before and that Sims stated she would come by counsel’s office that day but she did not, nor did Sims respond to any phone calls made by the investigator that day. The defense counsel then added for the record that Sims had told her that “she was with Mr. Lipsey at some time she believed during the 10th.”
¶ 12. The standard applied for appellate review of a trial court’s sanction for discovery abuses is “whether the trial court abused its discretion in its decision.” Gray v. State, 799 So.2d 53, 60 (¶ 26) (Miss.2001) (quoting Kinard v. Morgan, 679 So.2d 623, 625 (Miss.1996)). On appeal, the reviewing court may only reverse a trial court’s decision upon finding an abuse of discretion. Id. (citing Conley v. State, 790 So.2d 773, 782 (¶20) (Miss.2001)).
¶ 13. Rule 9.05 states that:
Upon the written demand of the pi-ose-cuting attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such other time as the court may direct, upon the prosecuting attorney a written notice of the intention to offer a defense of alibi, which notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon which the defendant intends to rely to establish such alibi.
[[Image here]]
If, prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information previously furnished, the party shall promptly notify the other party or the party’s attorney of the name and address of such additional witness.
Upon the failure of either party to comply with the requirements of this rule, the court may use such sanctions as it deems proper, including:
1. Granting a continuance;
2. Limiting further discovery of the party failing to comply;
3. Finding the attorney failing to comply in contempt; or
4. Excluding the testimony of the undisclosed witness.
This rule shall not limit the right of the defendant to testify in his/her own behalf.
For good cause shown, the court may grant an exception to any of the requirements of this rule.
Lipsey does not challenge Rule 9.05 as arbitrary or disproportionate to the purposes the rule is designed to serve. Instead, Lipsey argues that since the defense counsel turned over the information as soon as she received it, and counsel did not attempt to gain a tactical advantage over the State, an arbitrary application of the rule denied him the fair right to a complete defense.
¶ 14. However, the record shows that Lipsey failed to raise this con *347 stitutional claim in the trial court when the judge was considering whether to exclude the alibi witness, or at any other time. “An objection at trial cannot be enlarged in a reviewing court to embrace an omission not complained of at trial.” Kiker v. State, 919 So.2d 190, 199 (¶34) (Miss.Ct.App.2005) (citing Brown v. State, 682 So.2d 340, 350 (Miss.1996)). Thus, this issue is procedurally barred.
¶ 15. Procedural bar notwithstanding, Lipsey’s argument is also without merit. We find Coleman v. State, 749 So.2d 1003 (Miss.1999) analogous to this case and instructive on the constitutional argument Lipsey makes on appeal. In Coleman, the Mississippi Supreme Court held that the trial court’s exclusion of the defendant’s proposed alibi witness based on a failure to comply with Rule 9.05 was proper. Id. at 1010 (¶ 19). The State made a written demand to the defense for alibi witnesses on April 13, 1995. Id. at 1007 (¶ 8). The record indicated that the defendant did not notify his attorney of his desire to pursue an alibi witness until one week before trial. Id. at 1006 (¶ 5). A few days later, defense counsel notified the State, via a hand-delivered letter, of its intent of using an alibi witness. The notice did not give the defendant’s alleged whereabouts at the time of the crime or the alibi witness’s address. Id. The witness was finally located the night before the last day of trial and did appear in court, but when the trial judge heard her testimony outside of the presence of the jury, he excluded her as a witness because the letter notifying the State of the witness did not comply with Rule 9.05. Id.
¶ 16. The Coleman court noted that in previous discussions regarding sanctions for discovery violations, the Mississippi Supreme Court has cited to Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Id. at 1008 (¶11). This Court, in Houston v. State, 752 So.2d 1044, 1047 (¶ 12) (Miss.Ct.App.1999), explained that the Taylor court:
was asked to hold that the ultimate sanction of excluding defense alibi witnesses was a violation of a defendant’s Sixth Amendment rights.... The Supreme Court held that, so long as the trial court had some measure of discretion to assess the seriousness of the infraction and measure out an appropriate sanction, it was not a constitutional violation [of the defendant’s Sixth Amendment right to compulsory process] to exclude alibi witnesses in those instances where the defendant’s failure to respond to an appropriate request could be seen as wilful.
Id. (citing Taylor, 484 U.S. at 415, 108 S.Ct. 646). Houston, however, involved the defense counsel, not the defendant, ignoring the State’s request for alibi defense information, which this Court found as a wilful violation of the rules of criminal prosecution. Id. at (¶ 13). The Mississippi Supreme Court in Coleman, however, which was handed down after this Court’s decision in Houston, dealt with a defendant’s wilful violation of the discovery rules, not defense counsel’s. Coleman thus fully adopted the rule in Taylor for this situation:
Where a trial court finds that an alibi discovery violation is willful and motivated by a desire to obtain a tactical advantage, or where the facts indicate that the defendant intentionally failed to co-operate with his own counsel to the extent of indicating a willful disdain for the adversarial system that would minimize the effectiveness of cross-examination and the adversary process, excluding the proffered testimony is entirely consistent with both Rule 9.05 and the Sixth Amendment Compulsory Process Clause.
*348 Coleman, 749 So.2d at 1010 (¶ 19) (emphasis added). Coleman explains the policy behind this holding, stating:
Allowing a trial judge the discretion to exclude otherwise admissible evidence on the basis of an intentional discovery violation, even when less drastic sanctions are available, undergirds the principles of fairness in our adversarial system. While the Sixth Amendment Compulsory Process Clause gives defendants the right of calling witnesses to their aid, rules of fairness require that constitutional limitations and sanctions be applied equally in the pursuit of justice.
Id. at 1009-10 (¶ 17).
¶ 17. In this case, similar to Coleman, Lipsey’s public defender had been representing him for over a year before Lipsey informed her, the day before trial was set to commence, that he had an alibi witness. Lipsey’s counsel makes much of the fact that she informed the prosecution as soon as Lipsey told her about this information. While the trial court judge did not make a specific finding of a “wilful” violation of either the defense counsel or the defendant himself, as in Coleman, we find sufficient facts in the record to indicate that while Lipsey’s counsel was forthcoming about the new alibi information, Lipsey himself was not. Lipsey’s timing is suspect; he had over one year to inform his counsel about the alibi witness and decided, on the Labor Day holiday and the day before trial commenced, to do so. The record also indicates that Lipsey’s counsel made a diligent effort to locate and interview Sims once she had received this information. However, as in Coleman, “[t]he testimony of this surprise alibi witness would have disrupted the adversary process and flaunted the public interest in the fair and efficient administration of justice.” Coleman, 749 So.2d at 1010 (¶ 19). Under the circumstances of this case, we find no violation of Lipsey’s Sixth Amendment right to compulsory process.
¶ 18. Additionally, the trial court found that Lipsey’s identification of Sims as an alibi witness, and notification to the State, was not timely or proper under Rule 9.05, and we agree. Under Rule 9.05, Lipsey was required to provide the State within ten days of the State’s written demand, or at another time which the court directs, a written notice of “the specific place or places at which the defendant claims to have been at the time of the alleged offense,” but he did not. Lipsey also failed to produce Sims’s proposed testimony, and no statements were made available. All defense counsel could relate, after naming Sims as an alibi witness, was that Sims was with Lipsey “some time during the 10th.” We find that the trial court judge did not abuse his discretion in excluding Lipsey’s alibi witness, Sims. Lip-sey’s argument that he failed to receive a fair and complete defense because of this ruling is without merit.
B. Prosecution’s Motion in Limine
¶ 19. Lipsey next argues that the trial court denied him of his chance to present a defense by granting the State’s motion to bar any mention at trial that the toxicology tests on the blood of Ray, Gilbert, and Rankin showed the presence of cocaine. Lipsey asserts that the trial court also denied him of his chance to present his defense by granting the State’s motion to bar any reference to the house at 3520 Cromwell Street as a “crack house.” The main assertion in Lipsey’s defense was that he was not present at 3520 Cromwell Street at the time of the murders; therefore, the identification of him by Virden, whom Lipsey alleges was clearly intoxicated during the alleged incident, was a case of misidentification. Lip- *349 sey submits that had the jury heard that all three murder victims had cocaine present in their bloodstreams; the house was known as a “crack house”; and Lipsey claimed to be with Sims when the crime occurred, the jury may have acquitted Lip-sey. By denying him these opportunities at trial, Lipsey argues that the trial court deprived him of his right to a complete defense.
¶ 20. “The standard of review for the admission or exclusion of evidence is an abuse of discretion.” Evans v. State, 25 So.3d 1054, 1057 (¶ 6) (Miss.2010) (citing Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003)). A trial court does not abuse its discretion in granting a motion in limine where the court determines that: “(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury.” Id. (quoting Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988)).
¶ 21. At trial, the State moved to exclude evidence of the fact that the three deceased victims tested positive for the presence of cocaine, stating that it was irrelevant evidence and might confuse or mislead the jury. Mississippi Rule of Evidence 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Lipsey argues that various indications support his claim that the residence at 3520 Cromwell Street was the scene of illegal drug use, and it was known in the community as a “crack house.” Lipsey claims that such evidence was relevant to his defense that some other person might have committed the murders. However, the State argued that no drugs were found in the house, and there was nothing to show that the cocaine ingested by the three murder victims had been ingested at the house. Thus, the trial court held that the fact that the victims had cocaine in their systems was not relevant. Notably, the trial court judge informed the parties that he might revisit this ruling, depending on the facts brought out at trial. The trial court additionally found that whether the house could be classified as a “crack house” was not relevant.
¶22. In the present case, Lipsey has failed to cite any case law to support his argument that “[wjhere there are drugs, there is usually money and the case law of this state is replete with tragedy that ensues from the confluence of drugs, money and greed, making it easier for jurors to believe that a third party committed the crime of which [Lipsey] was charged.” Lipsey has failed to show any connection between the fact that the victims had used cocaine, or had been shot in a place where cocaine may have been used, and Lipsey’s alleged misidentification as the perpetrator of the crimes. This issue is without merit.
C. Denial of Proffer and Recross-Examination of Dr. Hayne
¶23. Lipsey further argues that the trial court erred in denying him the right to recross-examine Dr. Hayne, the forensic pathologist, as to new matters brought out on redirect examination, and the trial court also erred in denying Lipsey the right to make a proffer as to what his recross-examination would have produced in the way of evidence. Specifically, Lip-sey submits that it was an abuse of discretion to prevent him from inquiring into Dr. Hayne’s estimation of the victims’ times of death and the inventory of personal effects found with Ray, Gilbert, and Rankin. Lip-sey asserts that such inquiries may have led the jury to infer illicit drug use and a *350 greater likelihood that someone other than Lipsey might have committed the crimes.
¶ 24. We note that although the Mississippi Constitution ensures criminal defendants the right to cross-examine witnesses against them, “recross-examination is not allowable as a matter of right, but a matter of trial court discretion.” Moore v. State, 1 So.3d 871, 874-75 (¶ 13) (Miss.Ct.App.2008) (quoting Bailey v. State, 952 So.2d 225, 239 (¶ 35) (Miss.Ct.App.2006)). The standard of review for a trial court’s denial of recross-examination is abuse of discretion. Id. at 875 (¶ 13) (citing Hubbard v. State, 437 So.2d 430, 434 (Miss.1983)). In addition, the Mississippi Supreme Court has held:
It is proper to exclude questions as to matters which were not opened up or brought out on redirect examination, or as to matters already fully covered, or discussed at length on cross-examination, where there is no claim of oversight and no reason stated why the matter was not inquired into on the cross-examination proper.
Id. (citing 98 C.J.S. Witnesses § 429).
¶ 25. During cross-examination of Dr. Hayne, Lipsey’s counsel attempted to inquire about the personal items found with the victims. The State objected, and a bench conference was held.[1] After the defense requested permission to recross-examine Dr. Hayne, the trial court denied the request, holding that the personal effects of the victims were not relevant to any issues in this cause; therefore, the court prevented the defense from questioning Dr. Hayne regarding those issues. The trial court also denied Lipsey’s request to make a proffer regarding the personal items.
¶ 26. As to the times of the victims’ deaths, the trial court judge clarified that he never prevented defense counsel from examining Dr. Hayne about the victims’ times of death. The record reflects that Lipsey then requested to make a proffer regarding the victims’ times of death, which was stated in Dr. Hayne’s autopsy reports. The trial court stated the defense could read part of the autopsy reports into the record as a proffer, but it was not necessary to call Dr. Hayne back to the stand to question him on the issue. The prosecutor countered that he did not think the defense counsel could make a proffer on the times of death because it was not part of the original bench conference on the issue during cross-examination — that is, just because defense counsel did not ask the question did not mean it could be answered in a proffer. However, no formal proffer was subsequently made by the defense counsel regarding the times of the victims’ deaths. We find nothing in the record to support Lipsey’s claim that the trial court denied his request to make a proffer on the issue.
¶ 27. Furthermore, during redirect examination by the State, Dr. Hayne was not questioned about personal items or times of death. Therefore, we do not find that the trial court abused its discretion in denying recross-examination regarding the issues of times of death or personal items found with the victims. We also find that Lipsey failed to support his allegations that questioning Dr. Hayne about personal items or the times of death would have somehow adversely affected Dr. Hayne’s credibility. This issue is without merit.
II. Whether the trial court failed to use the correct legal standard in admitting autopsy photographs.
¶ 28. Lipsey argues that the trial court abused its discretion in admitting the *351 autopsy photographs of the victims during the testimony of Dr. Hayne. Lipsey alleges that the State submitted these photographs in violation of Mississippi Rule of Evidence 403,[2] and claims that the photographs were introduced primarily to inflame and prejudice the jury against him, which denied Lipsey a fair and impartial trial.
¶ 29. Prior to trial, the defense moved for the exclusion of “gruesome” autopsy photographs. The State reassured the court that it did not intend to introduce photographs that it considered gruesome. The State submitted the photographs that it believed would be useful in assisting the jurors to visualize the crime scene during the course of Dr. Hayne’s testimony. The trial court reserved ruling on Lipsey’s motion until both the defense and the court had the opportunity to review the photographs, but the court held that the photographs were not to be used during voir dire or opening statements.
¶ 30. After jury selection, argument on the issue resumed. The trial court reviewed the photographs that the State indicated it would not introduce into evidence and those that it did intend to offer into evidence. The photographs included both crime scene and autopsy photographs. The trial court ruled that the State would be permitted to offer into evidence those photographs that the State had chosen to use.
¶ 31. Regarding the issue of admissibility of crime scene and autopsy photographs, the Mississippi Supreme Court has held that: “Photographs have evidentiary value where they: 1) aid in describing the circumstances of the killing and the corpus delicti; 2) where they describe the location of the body and cause of death; and 3) where they supplement or clarify witness testimony.” Westbrook v. State, 658 So.2d 847, 849 (Miss.1995) (internal citations omitted). “[T]he admissibility of photographs rests within the sound discretion of the trial judge” and will not be disturbed unless there is an abuse of that discretion. Id. (citing Griffin v. State, 557 So.2d 542, 549 (Miss.1990); Herring v. State, 374 So.2d 784, 789 (Miss.1979)). However, the trial judge’s discretion in admitting autopsy photographs “runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.” Id. (quoting Hart v. State, 637 So.2d 1329, 1335 (Miss.1994)).
¶ 32. Here, we note that the photographs either showed the crime scene and location of the bodies of the victims, or they were used by the State’s expert witness, Dr. Hayne, to supplement and clarify his testimony. The photographs had probative value; they aided in describing the circumstances of the killings, showed the location of the bodies and causes of death, and clarified Dr. Hayne’s and other law enforcement officers’ testimonies. Thus, the trial court did not abuse its broad discretion in admitting them into evidence.
III. Whether the trial court erred in denying relief on Lipsey’s motion to dismiss for failure to grant a speedy trial.
¶ 33. Lipsey argues that the trial court erred in denying his motion to dismiss for failure to grant him a speedy trial, which Lipsey claims is a violation of both his statutory and constitutional right to a speed trial. Lipsey was arrested on the charges of kidnaping and murder on November 19, 2005. He was indicted on April 11, 2006, and was arraigned on July *352 3, 2006. Lipsey filed a motion to dismiss charges for failure to provide a fast and speedy trial on August 24, 2007. At the time of trial on September 4, 2007, approximately 428 days had passed since Lipsey’s arraignment, and approximately 654 days since his arrest. The trial court judge denied Lipsey’s motion to dismiss, stating that the reason for the delay was valid, and he pointed out that Lipsey did not request a speedy trial until August 24, 2007, eleven days before the trial commenced.
¶ 34. The standard of review for claims of speedy-trial violations is well established:
Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. Under this Court’s standard of review, this Court will uphold a decision based on substantial, credible evidence. If no probative evidence supports the trial court’s finding of good cause, this Court will ordinarily reverse. The State bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion.
Mims v. State, 856 So.2d 518, 520 (¶ 2) (Miss.Ct.App.2003) (citing DeLoach v. State, 722 So.2d 512, 516 (¶ 12) (Miss.1998)).
¶ 35. The Sixth and Fourteenth Amendments to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee a defendant in a criminal case a right to a speedy trial. Sharp v. State, 786 So.2d 372, 377 (¶ 4) (Miss.2001). Mississippi Code Annotated section 99-17-1 (Rev.2007) also creates a statutory right to a speedy trial, requiring that an accused be brought to trial within 270 days of arraignment unless there is a showing of “good cause.” The constitutional right to a speedy trial attaches at the time the individual is accused. Stark v. State, 911 So.2d 447, 450 (¶7) (Miss.2005) (citing Hersick v. State, 904 So.2d 116, 121 (¶ 5) (Miss.2004)). Lipsey’s constitutional right to a speedy trial, thus, attached when he was arrested on November 19, 2005.
¶ 36. Regarding the statutory right to a speedy trial, if a defendant fails to raise this issue within 270 days of his arraignment, he “effectively acquiesced to the delay.” Walton v. State, 678 So.2d 645, 649-50 (Miss.1996). Lipsey did not complain about lack of a speedy trial until approximately 418 days after his arraignment, when he filed a demand for a speedy trial on August 24, 2007. Thus, Lipsey in effect acquiesced to the delay. Lipsey’s argument concerning a statutory violation of a speedy trial is without merit.
¶ 37. In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court set forth a balancing test that must be applied to determine whether a defendant’s constitutional right to a speedy trial has been denied. The Court identified four factors which are to be considered in making such a determination: (1) the length of delay; (2) the reason for delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. Stark, 911 So.2d at 450 (¶ 7) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). No one factor is dispositive; rather, the totality of the circumstances is considered. Jefferson v. State, 818 So.2d 1099, 1106 (¶ 11) (Miss.2002) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182).
A. Length of Delay
¶ 38. In the case before us, both parties concede that a period of approximately 654 days passed between Lipsey’s arrest and his trial. The Mississippi Supreme Court *353 has held that a delay of eight months or longer is “presumptively prejudicial,” thus requiring a balancing of the Barker factors. Stark, 911 So.2d at 450 (¶ 7) (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). We have such a circumstance here.
B. Reason for Delay
¶ 39. Once the delay is found presumptively prejudicial, “the burden of proof shifts to the State to show cause for the delay.” Stark, 911 So.2d at 450 (¶ 11) (citing Price v. State, 898 So.2d 641, 647 (¶ 10) (Miss.2005)). Not all reasons for a delay in trial are cause for dismissal of the charge on the speedy-trial grounds. Different reasons for the delay are given different weights. Birkley v. State, 750 So.2d 1245, 1250 (¶ 16) (Miss.1999) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). We note the Mississippi Supreme Court “has been hesitant to weigh the delay heavily against the State where the cause lies with a ‘tentacle of the State,’ such as the State crime lab, rather than with the district attorney’s office.” State v. Woodall, 801 So.2d 678, 683 (¶ 16) (Miss.2001) (quoting State v. Magnusen, 646 So.2d 1275, 1281 (Miss.1994)). In addition, “a congested trial court docket may constitute ‘good cause’ for a trial’s delay.” Felder v. State, 831 So.2d 562, 569 (¶16) (Miss.Ct.App.2002) (citing McGhee v. State, 657 So.2d 799, 802 (Miss.1995)). Docket congestion may weigh against the State, but only slightly. Birkley, 750 So.2d at 1250 (¶ 16) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). Finally, a missing witness has been deemed a valid reason justifying appropriate delay. Id.
¶40. Lipsey asserts that he did not request a continuance but continually announced that he was ready for trial at the docket call. However, the State argues that docket congestion and the need to complete testing on evidence delayed Lip-sey’s case from being tried at an earlier date. The State pointed out that the tests on the evidence from the crime scene were not completed until recently — the tool-marks testing was not completed until August 29, 2007, and the gunshot-residue testing on one of the victims was not completed until May 25, 2007. The State also refutes Lipsey’s claim that he continually announced that he was ready for trial, as the first time Lipsey was placed on the docket was on August 14, 2007, which was the most recent docket call prior to the trial.
¶ 41. The trial court ruled that the reason for the delay was a valid one as the court was working on older cases prior to 2006. Once Lipsey’s case was placed on the docket, he announced he was ready for trial at the docket call of August 14, 2007, and he was placed on the trial docket. We find no error in this regard.
C. Assertion of Right to Speedy Trial
¶ 42. Lipsey received a trial within ten days of filing his demand for speedy trial. Lipsey cites Smith, 550 So.2d at 409, arguing that his late assertion of his right to a speedy trial is not fatal to his claim. However, we note that the court in Smith also held that a late assertion of this right weighs against the defendant. Id.
¶ 43. In Black v. State, 823 So.2d 543, 549 (¶ 12) (Miss.Ct.App.2002), Gretchen Black asserted her right to a speedy trial for the first time in her motion to dismiss, which was filed three weeks before her trial was held. This Court ruled that although “[t]he accused does not have the duty to bring [him]self to trial, [he] gains more points under this factor where [h]e has asserted [his] right to a speedy trial in a timelier fashion.” Id. (citing Stogner v. State, 627 So.2d 815, 819 (Miss.1993)).
¶ 44. The trial court judge noted that Lipsey did not demand a speedy trial until *354 August 24, 2007, when he filed his motion to dismiss for failure to grant a speedy trial, which was only approximately eleven days before the trial actually occurred. The trial court judge also pointed out that an announcement at docket call that the defendant is “ready for trial” is not considered a demand for a speedy trial; a separate document must be filed. The judge stated that if Lipsey had made his demand for a speedy trial earlier he would have granted it; but as it was, Lipsey’s demand was untimely made. We find no error with this ruling.
D. Prejudice
¶ 45. For the final Barker factor, Lip-sey argues that he was prejudiced due to the passage of time between his arrest and trial because he could not remember the last names of neighbors or locate a witness who could confirm his alibi on November 10, 2005.
¶ 46. In Barker, the Supreme Court identified three interests protected by the right to a speedy trial that must be considered “when determining whether a defendant has been prejudiced by a delay in bringing him or her to trial .... (1) the interest in preventing oppressive pretrial incarceration, (2) the interest in minimizing anxiety and concern of the accused, and (3) the interest in limiting the possibility that the defense will be impaired.” Hersick, 904 So.2d at 123 (¶ 18) (citing Barker, 407 U.S. at 532, 92 S.Ct. 2182).
¶ 47. In turning to the first interest, preventing oppressive pretrial incarceration, we note that Lipsey asserts that pretrial incarceration for lengthy periods is considered oppressive and prejudicial. Lipsey had been incarcerated since his November 19, 2005, arrest. However, Mississippi case law has consistently held that “being incarcerated alone, without proof of any anxiety and stress above and beyond that which normally occurs with being incarcerated or demonstrating how the particular incarceration is oppressive, is insufficient to show sufficient prejudice.” Jefferson v. State, 818 So.2d 1099, 1108 (¶ 22) (Miss.2002).
¶ 48. The second interest, “minimizing anxiety and concern of the accused, is related to the considerations discussed under the third Barker factor, the defendant’s assertion of the right” to a speedy trial. Hersick, 904 So.2d at 124 (¶21). During the hearing on the motion, Lip-sey’s counsel merely claimed that Lipsey’s incarceration caused him to suffer anxiety; however, Lipsey failed to provide specific evidence concerning any anxiety he suffered as a result of his incarceration.
¶ 49. The third and most important interest is limiting the possibility that the defense will be impaired. Id. at (¶25). Although Lipsey claims he was prejudiced by the passage of time between his arrest and the trial because he could no longer recall the names of witnesses or the location of a particular alibi witness (Sims), Lipsey’s counsel represented to the trial court that she had never actually spoken to this particular alibi witness, and she admitted that she did not attempt to interview or locate the witnesses at the time of Lipsey’s arrest, over a year and a half before the trial. No explanation appears in the record as to why Lipsey did not give his attorney the names or location of these witnesses at an earlier date. After listening to the parties argue their pretrial motion regarding Lipsey’s motion to dismiss for failure to grant a speedy trial, the trial court ruled that the claims of prejudice to Lipsey were without merit, as any prejudice was caused by Lipsey himself.
¶ 50. Under the totality of the circumstances, and upon examination and analysis of the Barker factors, we find Lipsey’s constitutional right to a speedy trial was not violated. Accordingly, the trial court *355 did not err in denying Lipsey’s motion to dismiss for lack of a speedy trial.
¶ 51. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I, II, AND III, MURDER, AND SENTENCE OF LIFE FOR EACH COUNT; COUNT IV, KIDNAPING, AND SENTENCE OF THIRTY YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.

. Mississippi Rule of Evidence 403 states that "[a]lthough relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice."