# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00757-COA

CHRISTOPHER GOLDEN                                                   APPELLANT

v.

STATE OF MISSISSIPPI                                                   APPELLEE

DATE OF JUDGMENT:          04/23/2019
TRIAL JUDGE:               HON. GEORGE M. MITCHELL JR.
COURT FROM WHICH APPEALED: MONTGOMERY COUNTY CIRCUIT
                           COURT
ATTORNEYS FOR APPELLANT:   OFFICE OF STATE PUBLIC DEFENDER
                           BY: GEORGE T. HOLMES
                           CHRISTOPHER GOLDEN (PRO SE)
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY:         DOUG EVANS
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED - 04/13/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     On March 7, 2018, Christopher Golden was indicted by a grand jury in Montgomery County for kidnapping pursuant to Mississippi Code Annotated section 97-3-53 (Rev. 2014) (Count I), two counts of possession of a deadly weapon by a felon pursuant to Mississippi Code Annotated section 97-37-5(1) (Rev. 2014) (Count II and Count V), and two counts of armed robbery pursuant to Mississippi Code Annotated section 97-3-79 (Rev. 2014) (Count III and Count IV).  After a one-day jury trial on April 16, 2019, Golden was found guilty of

the charges in Count I, Count II, and Count III.[1]  Golden was sentenced as a habitual offender pursuant to Mississippi Code Annotated section 99-19-8(Rev. 2015) and ordered to serve twenty-five years for Count I, ten years for Count II, and twenty-five years for Count III with each sentence to be served consecutively in the custody of the Mississippi Department of Corrections (MDOC).  Aggrieved by the outcome of the jury trial, Golden appealed and asserted the following issues: (1) whether the circuit court erred in refusing to give jury instruction D7 regarding identification testimony, and (2) whether the circuit court erred in refusing to give jury instruction D8 regarding Golden's alibi defense.  Additionally, Golden filed a pro se supplemental brief in which he asserted a claim that his constitutional and statutory rights to a speedy trial were violated.

## FACTS AND PROCEDURAL HISTORY

¶2.     On Saturday, September 10, 2016, Narendra "Nick" Patel was working alone at the front desk of the Magnolia Lodge at 201 Brister Drive, Winona, Mississippi.  On that same evening, Camille Garrett was traveling in her vehicle on Highway 82 in Grenada County near Poor House Road when she encountered Christopher Golden[2] walking down the highway in the rain.  Garrett testified that Golden asked her to take him to the Magnolia Lodge and rent a room for him because he did not have any identification to rent the room for himself.

---

[1] Counts IV and V were dismissed because the victim was unable to testify at trial.

[2] Garrett testified that she did not originally know Christopher Golden's real name. She had previously met Golden through his cousin and knew him as "Patrick."  However, Garrett identified Golden in the courtroom as the person she knew as "Patrick" and the same man she picked up on the night of the robbery and for whom she had rented a hotel room at the Magnolia Lodge.

According to Garrett, Golden gave her the cash to rent the room. Garrett entered the Magnolia Lodge, rented a room, and was given room number 124.[3] Garrett testified that after she rented the room for Golden and dropped him off at his room, she left the Magnolia Lodge and did not return. Garrett claimed that she did not know anything else about the alleged robbery and kidnapping that occurred later that evening.

¶3. Patel testified that Garrett came to the Magnolia Lodge and rented a motel room around 7:00 p.m. on September 10, 2016. Patel testified that sometime later that night, a man came out of room 124 and requested a plunger because his toilet was overflowing. According to Patel, approximately twenty to thirty minutes later, the same man returned to the lobby and requested more towels because all of his towels were wet from cleaning the toilet. Patel testified that when he returned with the clean towels, the man was holding a gun. Patel identified Golden as the man who was holding the gun. But during cross-examination, Patel stated that while Golden looked like the man who pulled the gun on him, the man he encountered on the night of the robbery was short. Patel testified that he could not be sure of Golden's identity without knowing his height. Patel stated that Golden ordered him to take out all of the money in the register, totaling approximately $400.00. According to Patel, after he emptied the register, Golden forced him to go into room 124 to retrieve Golden's bag, and then they went back to the office to get Patel's car keys. Patel testified that Golden made him get into his car and drive approximately three miles with Golden sitting in the back seat. At that point, Golden demanded to be let out of the vehicle on the side of the road in

_____

[3] At trial, Patel identified a receipt for the room rental bearing Garrett's name, corroborating her story.

the rain. Patel testified that Golden was holding a gun throughout the entire encounter. After dropping Golden off, Patel drove his car back to the Magnolia Lodge and called the police.

¶4. Don Herod, the chief investigator of the Winona Police Department, went to the Magnolia Lodge on Monday, September 12, 2016, to begin his investigation and collect the security video footage from the night of the robbery and kidnapping. The video footage showed Garrett entering the Magnolia Lodge to rent a room and then showed Garrett and a male entering room 124. Garrett only stayed a short period of time before leaving. Around an hour after Garrett left, another car pulled up to the Magnolia Lodge, and two individuals entered room 124. Those same two individuals, a man and a woman, left the room shortly after they arrived. No one else entered or exited room 124 until approximately 11:37. At that time, the security video footage showed a man leaving room 124 and heading to the lobby. Herod testified that he had known Golden for a "long time" and that when he initially watched the security video footage and saw the man enter the lobby, he "knew exactly who it was." In reference to his identification of Golden from the security video footage, Herod testified that "I've been in law enforcement, at this time for about 16 years, and I've never been so sure about any other surveillance video that I've watched." The remainder of the security video footage corroborated Patel's rendition of the events that transpired at the Magnolia Lodge on the evening of September 10, 2016. Golden was arrested on September 22, 2016, by United States Marshals in Grenada County in connection with the alleged crimes.

4

¶5. Christopher Golden testified that he was not at the Magnolia Lodge on the evening of September 10, 2016. According to Golden, he did not see Garrett on that day and denied that he was the man in the security video footage that was previously shown to the jury. He stated that he was at the home of Othella Hamer on Poor House Road on the day of the robbery. Further, Golden testified that he did not own a gun because of his status as a felon.

¶6. After deliberation and review of the evidence, the jury returned guilty verdicts on Count I, Count II, and Count III. Golden was sentenced immediately thereafter. Aggrieved by the jury verdicts, Golden appealed. He alleges three issues on appeal: two concerning the denial of jury instructions and one concerning a violation of speedy trial rights, all of which will be addressed below.

## STANDARD OF REVIEW

¶7. It is well-settled that the standard of review for the giving or refusing of jury instructions is an abuse of discretion. *Taylor v. State*, 109 So. 3d 589, 595 (¶18) (Miss. Ct. App. 2013) (citing *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012)). Questions of law are reviewed de novo. *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999).

## ANALYSIS

### I. Did the circuit court commit reversible error by refusing to give jury instruction D7 regarding identification testimony?

¶8. Golden alleges that the circuit court committed reversible error by refusing to give jury instruction D7 regarding identification testimony. More specifically, Golden claims that the law requires that a jury instruction in the form of D7 be given when the identification of the defendant has only been made by one witness and there is no other corroborating

evidence linking the defendant to the alleged crime.

¶9.    Proposed jury instruction D7 stated:

> The Court instructs the jury that one of the issues in this case is the identification of the defendant as the person who committed the crime charged. The State has the burden of proving identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression of the witness, and its value may depend upon your consideration of several factors. Some of the factors which you may consider are:
>
> 1.    The witness' capacity and opportunity to observe the offender. This includes, among other things, the length of time available for observation, the distance from which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness;
>
> 2.    The degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness' own recollection;
>
> 3.    The occasions, if any, on which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with the identification at trial; and
>
> 4.    The occasions, if any, on which the witness made an identification that was consistent with the identification at trial, and the circumstances surrounding such identification.
>
> Again, the State has the burden of proving every element of the crime charged, and this burden specifically includes he identity of the defendant as the person who committed the crime for which he or she is on trial. If after considering the identification testimony in the light of all the proof you have a reasonable doubt that the defendant is the person who committed the crime, you must find the defendant not guilty.

Golden relies on *Warren v. State*, 709 So. 2d 415, 421 (¶28) (Miss. 1998), in his argument on appeal that the circuit court committed reversible error by failing to give proposed jury instruction D7. Pursuant to *Warren*, Golden argues that the identification instruction should have been given because the case turned on his identification "by a single person" at trial,

6

and as such the identification instruction was required. *Id.*

¶10.    Golden's argument lacks merit because more than one individual identified him at trial as the occupant of room 124 and as the man who robbed and kidnapped Patel. Patel first identified Golden as the man who robbed and kidnapped him on the evening of September 10, 2016. He correctly identified him in the courtroom by describing the color of his shirt on the day of trial. Golden alleged that Patel wavered on cross-examination. However, Patel merely testified that to be sure of Golden's identity, he would need to see his height. Garrett also identified Golden as the man that she dropped off at Magnolia Lodge room 124 on September 10, 2016. She also identified him in the courtroom on the day of trial. Golden argues that any evidence that Garrett dropped him off at the Magnolia Lodge prior to the alleged crime was insufficient to prove culpability. However, Garrett's testimony, coupled with the surveillance footage and Patel's testimony, corroborate his involvement in the crime. Finally, Herod identified Golden as the individual in the security video footage. While Golden was not present in the courtroom while Herod was testifying, Herod stated that he had known Golden for many years and was sure of his identification in the surveillance video.

¶11.    In *Scott v. State*, 878 So. 2d. 933, 970-71 (¶¶105-07) (Miss. 2004), *overruled on other grounds by Lynch v. State*, 951 So. 2d 549, 557 (¶24) (Miss. 2007), the Mississippi Supreme Court held that where the identification of the defendant did not rest solely on the testimony of one eyewitness, but rather where there was additional testimony or evidence against him, there was no requirement for an identification jury instruction. In this case, the cumulative

7

testimony from Garrett, Patel, and Herod as well as the evidence from the security video footage eliminates the necessity for an identification instruction under Golden's argued theory on appeal. Therefore, we find no abuse of discretion by the circuit court in denying jury instruction D7.

**II.      Did the circuit court commit reversible error by refusing to give jury instruction D8 regarding Golden's alibi defense?**

¶12.    Golden alleges that the circuit court committed reversible error by refusing to give jury instruction D8 regarding his alibi defense. Golden claims that the fact he was at Othella Hamer's home on Poor House Road supported the giving of jury instruction D8. He claims that his alibi was further supported by Garrett's testimony that she could not recognize him from the Magnolia Lodge surveillance video footage and Patel's inconclusive identification testimony.

¶13.     At trial, Golden requested that the jury be given the following alibi instruction:

> Alibi means elsewhere or in another place. In this case, Christopher Golden is asserting the defense of alibi by saying that he was in another place at the time of the offense.
>
> The defense of alibi is a legal and proper defense under our state law. Christopher Golden is not required to establish the truth of his alibi to your satisfaction; but if the lack of evidence in this case arises in the minds of the jury a reasonable doubt as to whether Christopher Golden was present and committed the crime, then you must give him the benefit of the doubt and find him not guilty.

While Golden asserted that he had an alibi on the night of the robbery and kidnapping, he offered no additional witnesses or evidence to corroborate or substantiate his story. A defendant's alibi defense "must be supported by the evidence" for a jury instruction to be

8

given. *Cochran v. State*, 913 So. 2d 371, 375 (¶14) (Miss. Ct. App. 2005). "Where the proof does not support an alibi defense, the instruction should not be granted." *Id*. In the case sub judice, Golden offered no evidence or witness testimony other than his own to corroborate his alibi that he was at a home on Poor House Road at the time of the crime. The only evidence was one sentence uttered by Golden in the following exchange on direct examination: "Q. Where were you? A. I was on Poor House Road at Othella Hamer['s] house."

¶14. Two cases are instructive on this issue. In *Mootye v. State*, 287 So. 3d 270, 278 (¶22) (Miss. Ct. App. 2019), Mootye claimed that he was at home during the time of the alleged murders and therefore was entitled to an alibi jury instruction. This Court held that "Mootye's 'defense is nothing more than a simple denial of guilt.'" *See Owens v. State*, 809 So. 2d 744, 746 (¶7) (Miss. Ct. App. 2002) (An alibi defense involves "more than a simple denial by the defendant that he was present at the precise time the crime was committed."). This Court held that the record was deplete of any evidentiary basis for Mootye's alibi, and therefore his denial of guilt did not warrant an alibi instruction.

¶15. Further, in *Sims v. State*, 213 So. 3d 90, 100 (¶41) (Miss. Ct. App. 2016), this Court held that despite Sims's claiming to be at a nightclub and not the crime scene, the testimony and evidence presented at trial "revealed that Sims possessed the opportunity to commit the armed robbery at the reported time of the offense. As a result, the testimony failed to provide Sims with an alibi that foreclosed the possibility that he committed the armed robbery at the reported time and location of the crime." Regardless of Sims's testimony, and only Sims's

testimony, that he was at a nightclub at the time of the armed robbery, after a review of the record, this Court held that the evidence failed to support an alibi instruction.

¶16. Like *Mootye* and *Sims*, the only evidence here of an alibi was a self-serving statement of the individual charged with the crime without any additional witnesses or evidence corroborating that purported alibi. Here, there was also direct evidence contradicting Golden's statement or, at the very least, showing he was at two places that night, obviously at different times. Patel and Garrett's testimony, along with the security video footage, placed Golden at the scene of the crime further discounting Golden's testimony. Not only did Garrett's testimony place Golden at the scene of the crime, but Garrett testified that she picked Golden up near Poor House Road, the same road where Golden claimed to have been in his alibi. Golden's mere statement that he was not at the Magnolia Lodge at the time of the crime and that he did not commit the crimes for which he was charged is not sufficient to justify an alibi jury instruction. Further, his alibi testimony did not foreclose the possibility that he committed the armed robbery and kidnapping at the reported time and location of the crimes and also was at Othella Hamer's house before or after the crime. The testimony as to Golden being able to be at Othella Hamer's home either before or after the crime and also be at the scene of the crime was not in conflict with the one sentence uttered by Golden during direct examination. Therefore, we find no abuse of discretion by the circuit court in refusing to give jury instruction D8.

**III.    Were Golden's constitutional and statutory rights to a speedy trial violated?**

¶17. In a separate pro se brief, Golden alleges that both his constitutional and statutory

rights to a speedy trial were violated. The crimes that Golden allegedly committed occurred on September 10, 2016. Golden was arrested for those crimes on September 22, 2016. Golden was indicted on March 7, 2018, and arraigned on August 6, 2018. Golden's trial began on April 16, 2019. Golden argues he suffered prejudice as a result of the delay between his arrest and trial, and because of the delay, he was unable to find certain witnesses to testify in his behalf and that evidence was lost. More specifically, Golden claims that he was unable to investigate and collect affidavits from witnesses to support a motion for change of venue, unable to locate the male and female that allegedly entered room 124 of the Magnolia Lodge on the night of the crimes, and unable to locate his cousin who initially introduced him to Garrett. Golden claims that his cousin disappeared during the alleged delay. Golden also asserts that certain documents and letters that he received from Garrett were lost during the delay. Finally, Golden claims that the delay of trial interfered with his parole on a prior conviction.

### A. Constitutional Violation

¶18. Golden asserts that he was deprived of a speedy trial as guaranteed by the Sixth Amendment to the Constitution. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court set forth a four part test to determine whether the constitutional right to a speedy trial has been violated. The test requires the reviewing court to balance "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy-trial right; and (4) prejudice to the defendant." *Wilson*

11

*v. State*, 276 So. 3d 1241,1259 (¶44) (Miss. Ct. App. 2018) (citing *Barker*, 407 U.S. at 530).

"No one of these factors is, in itself, dispositive. Rather, they must be considered together, in light of all the circumstances." *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989) (citing *Barker*, 407 U.S. at 533).

## 1. Length of Delay

¶19. A defendant's constitutional right to a speedy trial "attaches 'at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge.'" *Johnson v. State*, 235 So. 3d 1404,1417 (¶45) (Miss. 2017) (quoting *Rowsey v. State*, 188 So. 3d 486, 495 (¶24) (Miss. 2015)). Golden was arrested on September 22, 2016, and his trial did not begin until April 16, 2019—a delay of 937 days—nearly two years and seven months later. "The Mississippi Supreme Court has held that a delay of eight months or longer is 'presumptively prejudicial,' thus requiring a balancing of the remaining *Barker* factors." *Lipsey v. State*, 50 So. 3d 341, 352-53 (¶38) (Miss. Ct. App. 2010). However, "'when the delay is presumptively prejudicial, that does not mean that actual prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the *Barker* analysis.'" *Franklin v. State*, 136 So. 3d 1021, 1033 (¶44) (Miss. 2014) (quoting *Johnson v. State*, 68 So. 3d 1239, 1242 (¶7) (Miss. 2011)). Because there was a 937-day delay between Golden's arrest and his trial, there is a presumption of prejudice, which triggers further analysis of the *Barker* factors further discussed below.

## 2. Reason for Delay

¶20. "Once a delay is found to be presumptively prejudicial, the burden of proof shifts to

the State to show cause for the delay." *Stark v. State*, 911 So. 2d 447,450 (¶11) (Miss. 2005).

The Supreme Court has established that "[d]ifferent weights should be assigned to different

reasons" for delay. *Barker*, 407 U.S. at 531.  Deliberate attempts by the State to delay trial

should be weighed heavily, while "more neutral" reasons such as an overcrowded docket

should be weighed less heavily.  *Id*.   Further, the Mississippi Supreme Court has held that

a delay caused by the actions of the defendant shall toll the running of the time period, and

that amount of time should be subtracted from the total amount of the delay.  *Wiley v. State*,

582 So. 2d 1008, 1011 (Miss. 1991).

¶21.    Golden was arrested on September 22, 2016, for the crimes subject to this appeal;

however, his probation for a prior crime was revoked five days later on September 27, 2016.

Golden served 537 days in prison for the prior crime before being released on parole on

March 18, 2018.  Just prior to being released on parole, Golden was indicted in the instant

case on March 7, 2018.  The record does not reflect any specific reasoning or justification

for the delay by either Golden or the State between Golden's arrest and indictment.

¶22.    Two motions for continuance were granted prior to Golden's trial.[4]   The first

continuance was granted after Golden was arraigned.  Although the State requested a

continuance, the State argued that the continuance was requested as a courtesy to defense

counsel to give him time to review the discovery and properly prepare for trial, rather than

a delay tactic.  Further, there is nothing in the record that would support an argument that

---

[4] As best this Court can determine from the record, there were no written motions for
continuance filed with the court by either party.  However, the circuit court granted two
continuances in response to oral motions made by the State.

13

there was any intentional delay by the State in requesting the first continuance.

¶23. The second continuance was requested by the State and was granted in order to secure Garrett's presence as a witness at trial. Garrett was a key witness for the State and placed Golden at the scene of the alleged crime on September 10, 2016. The State argued that because Garrett was a long haul truck driver, it was more difficult to have her subpoenaed for trial. This Court has previously held that "a missing witness has been deemed a valid reason justifying appropriate delay." *Lipsey v. State*, 50 So. 3d 341, 353 (¶39) (Miss. Ct. App. 2010). More recently, the Mississippi Supreme Court held, "A 'delay caused by the absence of a State's key witness should not be weighed against the State.'" *Casey v. State*, 302 So. 3d 617, 627 (¶29) (Miss. 2020) (quoting *Franklin v. State*, 136 So. 3d 1021, 1034 (¶48) (Miss. 2014)).

¶24. Finally, it is important to note that Montgomery County only has two terms of court per year and therefore each continuance led to additional delay until the next court term. In *Newell v. State*, 175 So. 3d 1260, 1269 (¶11) (Miss. 2015), the Mississippi Supreme Court held, "'Once the state establishes that the reason for the delay justifies tolling the clock, the clock is tolled until the next reasonably available term of court.'" (Quoting *Ross v. State*, 605 So. 2d 17, 22 (Miss. 1992)). When Golden finally filed his demand for a speedy trial on January 30, 2019, his trial was put on the active docket and occurred during the next immediate court term on April 16, 2019.

¶25. The evidence in the record is insufficient as to any additional justifications by the State regarding the delay between Golden's arrest and his trial. For example, the State did

not argue that the delay in trial was due to an ongoing criminal investigation or that the delay was due in part to limited opportunities to present Golden's case to a grand jury. In fact, the State's response to the reason for delay seems almost nonchalant and without supporting documents or informative arguments. Making the State's response more problematic is this Court's analysis of the delay is limited by the limited arguments proffered by the State. Because it is ultimately the State's responsibility to bring a defendant to trial and little was offered by the State to explain the delay, this factor weighs against the State. *Casey v. State*, 302 So. 3d 617, 627 (¶30) (Miss. 2020).

### 3.    Golden's Assertion of His Right

¶26.    Golden asserted his right to a speedy trial on January 30, 2019—861 days after his arrest and over ten months after his indictment. In *State v. Woodall*, 801 So. 2d 678, 684 (¶20) (Miss. 2001), the Mississippi Supreme Court addressed the critical importance of a defendant to assert his demand for speedy trial between arrest and indictment. Further, in *Bateman v. State*, 125 So. 3d 616, 630 (¶48) (Miss. 2013), the Mississippi Supreme Court stated that "this factor weighs against a defendant who waits a significant amount of time after arrest to demand a speedy trial." "The Fifth Circuit has noted 'the point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing.'" *Williams v. State*, 305 So. 3d 1122, 1133 (¶36) (Miss. 2020) (quoting *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976)). In this case, Golden waited 861 days from the time of his arrest and over ten months from his indictment to assert his right to a speedy trial, after which his proceedings were placed on the active docket for

15

the next available court term. Given the lengthy delay in Golden's demand for a speedy trial, this factor weighs against Golden.

### 4. Prejudice to Golden

¶27. The final prong of the *Barker* analysis is establishing what, if any, prejudice Golden suffered as a result of the delay.

> The Supreme Court has identified three main considerations in determining whether the accused has been prejudiced by lengthy delay: (1) preventing "oppressive pretrial incarceration;" (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.

*Brengettcy v. State*, 794 So. 2d 987, 994 (¶20) (Miss. 2001). The most serious of the three considerations is the last. *Johnson*, 68 So. 3d at 1245 (¶18). "Because 'the defendant is clearly in the best position to show prejudice under the 'prejudice' prong, the burden remains with him. . . .'" *Williams*, 305 So. 3d at 1133 (¶37) (quoting *Johnson*, 68 So. 3d at 1245 (¶16)). "This Court may find prejudice when evidence is lost, witnesses die, or the investigation turns stale." *Id.* at 1133 (¶38).

¶28. Golden asserts that as a result of the delay, he was prejudiced by the inability to investigate and locate witnesses to provide affidavits in support of his motion for a change of venue. However, Golden fails to argue with any specificity what efforts he made to procure those affidavits for his motion to transfer venue, nor does he explain any correlation between his inability to procure affidavits and the alleged delay of trial. More important, Golden never filed a motion for a change of venue arguing why he felt he could not receive a fair and impartial jury in Montgomery County. Finally, Golden offered no reason why the information for a change of venue was not available to him in 2019 as it would have been

16

in 2016. In fact, any unusual publicity that may have occurred at the time of the crime in 2016, none of which was proven, would certainly have been diminished in 2019 and if not, then easily provable in court in support of a motion for change of venue. Any allegation that Golden was prejudiced by not being able to gather evidence to support a motion for change of venue is purely speculative.

¶29. Golden further asserts that he was unable to find certain witnesses at the time of trial that would have been crucial to his defense. While Golden asserts that he could not locate a male and female witness and his cousin for trial, he offered no additional evidence of any efforts taken to find them or have them subpoenaed for trial. In fact, Golden never gave the names of the witnesses to the State that he now claims were crucial to his case. Further, it should be noted that the State was never in possession of the names of the two individuals who entered Golden's room nor his cousin's name. Golden was. How a delay in trial prevented him from locating the individuals only he knew existed was never explained.

¶30. In *Manix v. State*, 895 So. 2d 167, 177 (¶22) (Miss. 2005), the Mississippi Supreme Court held that "[v]ague allegations of the existence of a poorly identified exculpatory witness does not constitute prejudice." Manix claimed that he was unable to locate witnesses to testify in his behalf because of the delay. However, he could not provide the full name of the alleged witness to his attorney and did not give the name that he had to his attorney until a week before trial. Further, Manix did not provide any evidence to support his claim that he could not find the necessary witnesses for trial. Therefore, the supreme court found no actual prejudice.

17

¶31. Similarly in *Casey v. State*, 302 So. 3d 617, 628 (¶34) (Miss. 2020), Casey argued that his defense was impaired because he had lost contact with a witness, Mr. Durr, during the delay and that another witness, Casey's mother-in-law, had developed dementia. The supreme court noted that Casey presented no evidence at the trial-court hearing on his efforts to locate Mr. Durr, and there was no evidence presented as to his mother-in-law developing dementia. *Id*. at (¶35). Accordingly, the supreme court agreed with the trial court that Casey failed to show any actual prejudice resulting from the delay. *Id*. at (¶36).

¶32. Golden provided absolutely no evidence of any efforts to locate his cousin or the unknown man and woman who entered the hotel room on the night of September 10, 2016. Given the lack of evidence to support his claim of prejudice as to the unavailability of witnesses, Golden's argument is without merit.

¶33. Golden asserts on appeal that critical evidence was lost during the delay. More specifically, he claims that he was in possession of numerous letters from Garrett that were written to him while he was in prison. Golden claims that the Garrett letters would have proven that he was not the person at the Magnolia Lodge on the night of the robbery and kidnapping. On appeal, Golden claims that the Garrett letters were lost due to the delay in his trial. However, at the time of trial, Golden claimed that the Garrett letters were on the defense table before a break and allegedly taken by an unknown individual. It is impossible to comprehend how Golden can claim that the Garrett letters were lost over time awaiting trial and served as prejudice in his speedy trial arguments and yet also claim that the same letters were present at the counsel table during trial and mysteriously stolen by another

18

person. At trial, the circuit court found no evidence to substantiate Golden's claim that the letters were taken. Likewise, Golden provided no evidence on appeal to prove the existence of the letters or evidence to support his allegation that the letters were lost during the delay. More importantly, the letters that he claims were lost over time were allegedly written by Garrett, a witness who testified for the State. Therefore, any evidence he claims was lost was readily available to him through Garrett's cross-examination, during which he had a right to confront her about the alleged letters. In fact, Golden did just that. On cross-examination, Golden's attorney questioned Garrett about any correspondence with Golden while he was in prison, and she denied having written any letters to him.[5] She did admit that she received one letter from Golden, but her father intercepted the letter before she opened it because he did not want her involved with Golden or his legal issues.

¶34. In *Bailey v. State*, 78 So. 3d 308, 323 (¶56) (Miss. 2012), the supreme court held that it is the responsibility of the defendant to offer proof that the lost evidence "impaired his ability to mount a defense" or "impaired a fair-trial outcome." Otherwise, the allegation is mere speculation. In that case, Bailey claimed that he was prejudiced by the loss of an audiotape of a witness police statement. *Id*. at (¶55). He claimed that the audiotape was

[5] Detrimental to Golden's prejudice claim about the alleged missing Garrett letters is the fact that he did not claim that the letters were "stolen" from his table until after Garrett's cross-examination was complete and the State's next witness had taken the stand. In other words, while Golden's attorney cross-examined Garrett about her alleged correspondence with Golden, he never sought to introduce the letters in an effort to impeach Garrett when she denied writing any letters to Golden. One would think that if Golden was planning to utilize the Garrett letters at trial, he would have attempted to do so during Garrett's cross-examination. Therefore again one would think he would have complained that the letters were stolen at that point in the trial and not after another witness had taken the stand.

19

important to his defense and would corroborate his prior statement to the police. *Id*.

However, the supreme court held that Bailey failed to offer any such proof that the lost evidence impaired the outcome of a fair trial.

¶35. Similarly, Golden first failed to prove the existence of the letters allegedly written by Garrett and secondly that they became missing during the delay between his arrest and trial. As such, any actual prejudice resulting from the lost evidence is rank speculation. Therefore this argument is without merit.

¶36. Finally, Golden argues that the delay in trial prejudiced his parole in a prior crime and manifested itself in the revocation of parole. Golden claims that after he was found guilty and sentenced on April 16, 2019, his parole for a prior crime was revoked on May 7, 2019. He claims that as a result of his parole being revoked, he has to serve the remainder of that nine year and thirty-six day sentence. However, there is no indication or proof that the delay had any bearing on his parole revocation or that his parole would not have been revoked regardless of the delay. Absent any specific evidence to the contrary, this argument is without merit.

¶37. While a portion of the delay between Golden's arrest and his trial was attributable to the State, given the lack of evidence of actual prejudice and Golden's untimely assertion of his demand for a speedy trial, we find no violation of Golden's constitutional right to a speedy trial.

### B. Statutory Violation

¶38. In addition to his claim of an alleged violation of his constitutional right to a speedy

20

trial, Golden asserts a violation of his statutory right to a speedy trial as well. Mississippi Code Annotated section 99-17-1 (Rev. 2015) states, "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Golden was arraigned on August 6, 2018, and his trial began on April 16, 2019—253 days later. Because Golden was tried within the parameters set forth in Mississippi Code Annotated section 99-17-1, his statutory right to a speedy trial was not violated. Therefore, Golden's statutory speedy trial argument is without merit.

**CONCLUSION**

¶39. After review, we find no error by the circuit court in failing to give jury instructions D7 and D8. Further, we find that Golden failed to provide sufficient evidence to support his claim that he suffered a violation of his constitutional or statutory right to a speedy trial. Accordingly, we affirm Golden's convictions and sentences.

¶40. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**